UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH VERIZON CELLULAR TELEPHONE NUMBER (603) 856-3802 | No. 21-mj-236-AJ-01 |

AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Matthew B. Flynn, being duly sworn, depose and state as follows:

**Introduction and Task Force Officer Background**

1. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 2703(c)(1)(A), authorizing agents of the Federal Bureau of Investigation ("FBI") to ascertain the physical location, including but not limited to ongoing E-911 Phase II data (or other precise location information) ("the Requested Information") for a Verizon cellular telephone assigned phone number (603) 856-3802 (hereinafter "Target Telephone" or "TT1"), for a period of thirty (30) days from the date that Verizon begins to produce the Requested Information. As set forth below, I believe that the user of TT1 is a methamphetamine distributor who is operating in the District of New Hampshire and using TT1 in furtherance of an ongoing conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

2. I am a Task Force Officer ("TFO") with the FBI currently assigned to the FBI's Safe Streets Gang Task Force ("SSGTF"). I have been a TFO with the FBI since October 2020.

3. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code. I have been trained in drug investigations, narcotic

identification, search warrants, surveillance, debriefing of informants, and other investigative procedures. Through my training, education, and experience, I have become generally familiar with the manner in which drug distribution organizations conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, and the efforts of persons involved in such activity to avoid detection by law enforcement.[1] In the course of participating in investigations of drug distribution organizations, I have conducted or participated in surveillance, the purchase of illegal drugs, the execution of search warrants, the use of tracking devices, debriefings of subjects, witnesses, and informants, and reviews of consensually recorded conversations and meetings.

4.      Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a search warrant, I have not included details about every aspect of the investigation. While this affidavit contains all the material information, I am aware of that is pertinent to the requested search warrant, it does not set forth all my knowledge about this matter.

5.      I believe that there is probable cause that the Requested Information will constitute or lead to evidence of offenses involving drug trafficking, in violation of Title 21, United States Code, Section 841(a)(1) ("the Target Offense"), as well identify other individuals who are engaged in this conspiracy to distribute controlled substances.

---

[1] Observations made and conclusions drawn throughout this affidavit that are based on my training and experience also include the training and experience of other law enforcement agents and officers with whom I have discussed these issues.

6.      The facts in this affidavit are based on my training and experience, my personal knowledge and involvement in this investigation, phone analysis, and information obtained from other agents/ task force officers and witnesses.

7.      This Court has jurisdiction to issue the requested warrant because it is "a court with Jurisdiction over the offense under investigation." 18 U.S.C. § 2703(a).

## Facts and Circumstances

8.      The FBI is involved in a criminal investigation into a drug trafficking conspiracy operating in New Hampshire. Through the course of its investigation, the FBI has identified Aaron OLSON ("OLSON") as a member of this conspiracy. The FBI believes that OLSON uses his personal cellular telephone in furtherance of this ongoing conspiracy, including most recently TT1, to facilitate distributing narcotics. To date, the investigation has involved reviewing phone/ communication app messages, interviews with cooperating defendants, physical surveillance, and controlled purchases of methamphetamine. Based on the investigation, there is probable cause to believe that OLSON is the user of TT1 and that he is using TT1 in furtherance of this ongoing conspiracy.

9.      As part of the investigation, the FBI is utilizing a confidential human source ("CHS"), hereafter referred to as a CHS, to make controlled purchases of narcotics from OLSON. The CHS is facing potential criminal charges based on his/her 2021 incident found by the Hudson, New Hampshire Police for possession with the intent to distribute narcotics. The CHS has provided information and/or active cooperation at the direction of the FBI, in the hopes of receiving prosecutorial and/or judicial consideration prior to being criminally charged. Before the CHS's arrest, he/she was arrested in the State of Nebraska for felony Intent to Deliver

3

Controlled Substance Schedule 1,2,3 (marijuana). The CHS served 223 days in Nebraska State prison. I believe that the information provided by the CHS is reliable as it is consistent with other government intelligence and has been independently corroborated through this investigation and other sources.

10. On April 20, 2021, a confidential human source ("CHS"), hereafter referred to as the CHS, acting under the direction of the FBI, arranged to meet with OLSON to purchase two (2) ounces of methamphetamine in Concord, New Hampshire. The two communicated through cell phone communication apps; Signal and Facebook Messenger.[2] The messages were viewed and documented by FBI. In anticipation of this meeting, members of the FBI SSGTF established surveillance in the area. Prior to the meeting, members of the FBI SSGTF met with the CHS. During this time, the FBI searched the CHS and vehicle for unexplained currency, weapons and/or contraband with negative results. FBI provided the CHS with audio and video recording equipment and $1400.00 of official agency funds ("OAF") for the controlled purchase of narcotics. The CHS was contacted via Facebook Messenger and Signal by OLSON to meet at 81 Fisherville Road in Concord, New Hampshire. Members of the FBI SSGTF then followed the CHS in CHS' vehicle to 81 Fisherville Road Concord, New Hampshire.

11. FBI agents then observed the CHS enter the parking lot of 81 Fisherville Rd. During this time, FBI agents observed a male subject matching OLSON's description exit the apartment complex. OLSON entered the CHS's vehicle, and the vehicle traveled to 47 Fisherville Rd in Concord, New Hampshire approximately ¼ mile away. Upon arrival, OLSON entered the convenience store and returned to the CHS' vehicle. OLSON then provided the CHS

---

[2] Facebook Messenger and Signal App are used from a 'smart' cellular telephone

4

with two (2) ounces of suspected methamphetamine for $1400.00. OLSON then left the area on foot.

12.     This affiant and a second TFO met with the CHS at a predetermined location. At this time, the CHS provided us with two different baggies believed to contain methamphetamine- one ounce in each. The CHS also returned the audio/video equipment the CHS had previously been given. Other agents then searched the CHS and the CHS's vehicle with negative results for contraband, weapons, or unexplained amounts of currency. The CHS indicated that the CHS met with OLSON and completed the transaction hand-to-hand. The FBI subsequently field tested the substances with positive results for amphetamines using a TruNarc device. These substances have been submitted to the DEA Northeast Lab for analysis and the results are pending.

13.     A review of the audio/video equipment retrieved from the CHS indicated that while the CHS was meeting with OLSON, OLSON appeared to hand the CHS the suspected methamphetamine. Subsequently, I compared the image of the subject in the video believed to be OLSON to a driver's license photo of an individual identified by law enforcement as OLSON. I believe that based on this comparison that the individual in the video who met with the CHS is OLSON.

14.     The CHS confirmed that he/she contacted OLSON through Facebook Messenger and Signal App to facilitate the transaction. I reviewed the messages between OLSON and CHS via Signal App which stated:

OLSON:      Shouldn't b an issue. I've got multiple sources right now.

CHS:          Some. Gay dude in Manchester selling them for 600. Lost j and m to that one

| | |
|---|---|
| OLSON: | Someone up here been dumping then at 575… Fucked my hustle up |
| CHS: | God damn who!? We need to get him as our plug lol. And I'll be up that way by around 1230 I'm just wrapping up a small job. |
| OLSON: | Not a problem I'll be regrouping over at Concord Park so I'll be there for a few hours. Pp that's give me a chance to connect with this kid who was saying he can grab 575 per so maybe we can get something up and running for the next scoop |
| CHS: | On my way |
| OLSON: | Txt when u r here. Hey I'm off of the conference call and free so are you still on your way or what's the plan? |
| CHS: | I'm almost in Concord |
| OLSON: | Ok |
| CHS: | I'm outside bro |
| OLSON: | K. I'm comi g down |

15. On May 11, 2021, I directed the CHS to arrange a methamphetamine purchase from OLSON. The CHS and OLSON communicated through apps Facebook Messenger and Signal. The CHS was instructed by OLSON to pick up OLSON at his residence; 770 Broad Cove Hopkinton, NH. The CHS was provided with $1200.00 OAF and audio/video recording equipment. OLSON got into the CHS' vehicle at 770 Broad Cove. A live transmitter in conjunction with physical surveillance observed as OLSON instructed the CHS to travel to 9 Village Rd Penacook, New Hampshire which is the location of the Thirty Pines Market. Upon arrival, OLSON exited the CHS vehicle and met with a female operating NH Registration # 477

8804, a black Volkswagen Jetta. The registered owner was later identified as Sara E. BOURKE (D.O.B. 04/02/1986) by her driver's license photographs and arrest booking photographs from Concord, New Hampshire Police Department. OLSON returned from BOURKE's vehicle to the CHS' vehicle. The CHS then returned OLSON to 770 Broad Cove. According to the CHS' debrief and review of the audio/ video recording, OLSON completed the hand-to-hand transaction of two (2) ounces of suspected methamphetamine for $1200.00 with the CHS. The FBI subsequently field tested the substances with positive results for amphetamine using a TruNarc device. These substances have been submitted to the DEA Northeast Lab for analysis and the results are pending.

16. The CHS confirmed that he/she contacted OLSON through Facebook Messenger and Signal to over several days facilitate the transaction. FBI reviewed the June 9, 20201 conversation from Facebook Messenger on the CHS' cell phone.

> CHS: Yo yo. I'm gonna need some shit in the morning my guy dry. Gonna have $1000
>
> OLSON: K. I got u. Just grabbed a p on Sat. night[3]

The conversation on June 10, 2021 occurred as follows:

> OLSON: Hoping your still awake… I need to know how many you'll want today cuz I'm at the stash house now. If I have to come back to get your order later on it can be a pain in the ass if my partner is at work so I can't get into the house.
>
> CHS: 1000 bucks worth

---

3 "P" is known from training and experience to be one pound of methamphetamine.

| | |
|---|---|
| OLSON: | Sorry I didn't c this till now. I can do that today if u still need it. |
| CHS: | Yoooo. Yooooo |
| OLSON: | Sorry I don't know why I miissed that message I think maybe it was on vibrate still Im in the middle of replacing a wheel bearing on my friends and impala I'm assuming it comes out easy enough which I'm not optimistic since it's a 2003 as soon as that's done I'll be able to help you out I don't know what kind of time frame you're working with does it have to be done before she gets out of work? |
| CHS: | That's preferable but doesn't have to be.  What sort of time we looking at you think |
| OLSON: | Q all right let me double check with her and make sure and I don't have to wait till 5:00 so give me a sec |
| CHS: |  Ok |
| OLSON: | If you're able to wait till this evening like after 5:00 I can get them at 600 per. I might be able to do it sooner than that turns out but I need to know exactly how many you want I don't know that I can cover more than two folds for you. I got jumped last week by some scrams I took over 3000 bucks off of me so cash is somewhere tight |
| CHS: | 2 zips [4] .Ouch 3000. I have 1400 right now. Idc if it's a little more have people chomping at the bit here… |

---

[4] A "zip" is known from training and experience to be one ounce of methamphetamine.

OLSON: I told him as soon as possible so he's working on right now I'm going to guess about 2 hours from now just cuz he has to go pick up his daughter still from school. 770 broad cove hopkinton New hampshire that's the address that you would have yto go to if you want to plug it in GPS so you can see what you got for drive Time. I would meet you along the road at that address thought cuz it's a little dicey I don't want to hustle from that spot and cause problems but it's a country back road so it's not sketchy. If I can make it happen sooner obviously I will as quick as I can get done and gets done

CHS: Yo about 7 away

OLSON: K. Ill b aling the road

CHS: Ok

OLSON: You're in your pickup truck right? Just want to make sure you didn't just drive by me. I'll ask him if you met me at 30 pines would that be easier or is that further out of your way cuz it's closer for me

17. On June 22, 2021, FBI directed the CHS to arrange a methamphetamine purchase with OLSON. The CHS and OLSON contacted via Facebook Messenger and Signal using cell phones. The CHS was instructed by OLSON to pick up OLSON at 770 Broad Cove. The CHS was again provided with $1000.00 OAF and audio/video recording equipment. The CHS drove to 770 Broad Cove where he/she met OLSON. OLSON directed the CHS to drive to 1 Whitney Road Concord, New Hampshire where he could meet with his "partner." After reviewing the audio/ video recordings, I heard OLSON speak about his ability to "always have access to

9

ounces like all day long" in the area. According to the CHS debrief, in correlation with live physical surveillance and a review of the audio/ video surveillance, the CHS and OLSON arrived at 1 Whitney Road. OLSON stated he needed to "get keys" and entered the store; Xtra Mart. OLSON then directed the CHS to the rear of the building where he went inside the same vehicle from the previous buy/walk (BOURKE's vehicle). According to the CHS debrief, OLSON brought the CHS the suspected methamphetamine directly from BOURKE's empty and parked vehicle and OLSON used a scale inside the vehicle to weigh the meth. OLSON exchanged the two (2) ounces for $1000.00 OAF with the CHS via a hand to hand transaction. OLSON re-entered the store to return the car keys. The CHS then drove OLSON back to 770 Broad Cove.

18. The CHS confirmed that he/she contacted OLSON through Facebook Messenger, Signal, and text messages to facilitate the transaction. I reviewed and documented the Signal App conversation between the CHS and OLSON.

OLSON: Dude I left my fucking phone & pkgs. In sara's car. She found them and is trying to get them back to me. I suppose if you came up to the 770 Broad Cove Rd. address you could bring me to her in Boscawen????

CHS: I think I can handle that. That the same place I picked you up at before. Are you at brad cove now?

19. On August 10, 2021, I directed the CHS to arrange a methamphetamine purchase from OLSON. It was arranged that OLSON would sell the CHS five (5) ounces of methamphetamine for $2750.00 OAF.  The CHS and OLSON communicated through apps Facebook Messenger and Signal. OLSON explained that "his girl" has the "key" to where the methamphetamine is kept. OLSON also explained he needs to wait until "his girl" got out of

10

work to get methamphetamine. Approximately two to three hours later, the CHS was instructed by OLSON to pick up OLSON at his 770 Broad Cove Hopkinton, New Hampshire residence. Equipped with a live transmitting device, and constant FBI physical surveillance, FBI observed the following: Upon the CHS' arrival, OLSON approached the CHS' vehicle and entered. OLSON told the CHS they were going to a different location to gather the methamphetamine. OLSON and the CHS drove to Dollar General, 197 Fisherville Road Concord, New Hampshire. In the parking lot, OLSON exited the CHS' vehicle and approached BOURKE who was inside the driver's seat of her black Jetta also in the parking lot. OLSON returned to the CHS' vehicle and the two left toward OLSON's 770 Broad Cove residence. OLSON completed the hand-to-hand transaction with the CHS which was four (4) ounces of suspected methamphetamine for $2400.00 OAF. The CHS then returned directly to FBI personnel and provided the four (4) ounces of methamphetamine, audio/ video recording equipment, and extra funds. The CHS was searched for any contraband, weapons, or unexplained amounts of currency with negative results. The methamphetamine later field tested positive for amphetamine base using a TruNarc device. The methamphetamine was sent to the DEA Northeast Lab for further testing.

20. The CHS confirmed that he/she contacted OLSON through Facebook Messenger and Signal to facilitate the transaction. I reviewed the conversation between the CHS and OLSON over Facebook Messenger which revealed the following:

CHS: Yo I have some cash coming Tuesday morning and I'm looking for a deal. What can you do for 3k?

>OLSON: I think I can do a Q[5] for 22 or 23…. I'll push for 22. So for less than 3k I could get u 5 at 550/

21.     On December 3, 2020 OLSON was arrested by Nashua, New Hampshire Police Department for Driving without Giving Proof, and Driving After Suspension. During booking, OLSON gave the phone number; (603) 856-3802 as his personal number. While communicating with CHS on Signal, the phone number associated with the app is (603) 856-3802. OLSON sent the CHS "856-3802" via Facebook Messenger on June 22, 2021 as another point of contact.

## Need for Requested Information

22.     Obtaining the Requested Information for TT1 will assist the FBI in locating and identifying the pattern of life for the user, including his "stash house" and will assist with efforts to locate other people or places associated with the user's criminal activities. I therefore believe that reviewing the data obtained from the Requested Information will assist in revealing current and ongoing violations of federal law involving drug trafficking.

23.     There is "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result." 18 U.S.C. § 3103a(b)(1). Providing prior notice to the subscriber or user of TT1 would seriously jeopardize the ongoing investigation, as such a disclosure would give this person an opportunity to dispose of his cellular telephone, change patterns of behavior, notify confederates, flee, or continue flight from prosecution. Accordingly, the United States also requests that the warrant authorize delayed notification of the execution of the warrant for a period not to exceed 30 days after the end of the authorized period

---

5  A "Q" from my training and experience is in reference to a quarter pound. In this case, it is in reference to methamphetamine.

of tracking (including any extensions thereof), in accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3).

24. WHEREFORE, pursuant to 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41, it is requested that the Court issue a warrant and Order authorizing the acquisition of the Requested Information and directing Verizon Wireless, the service provider for TT1, to initiate a signal to determine the location of TT1 on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of TT1, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the FBI.

25. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate TT1 outside of daytime hours.

26. IT IS FURTHER REQUESTED that the warrant and this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that working copies should be made available to the United States Attorney's Office, FBI, and any other law enforcement agencies designated by the United States Attorney's Office.

/s/ Matthew B. Flynn
Matthew B. Flynn
Task Force Officer, FBI

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **Sep 14, 2021**

Time: **2:54 PM, Sep 14, 2021**

Hon. Andrea K. Johnstone
United States Magistrate Judge

14

**ATTACHMENT A**
**Property to Be Searched**

1. The wireless telephone assigned call number (603) 856-3802 ("Target Telephone"), whose service provider is Verizon Wireless, a service provider headquartered at 1095 Avenue of the Americas, New York, NY 10036.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Verizon Wireless including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B
## Particular Things to be Seized

All information about the location of the Target Telephone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This warrant does not authorize the collection of any content of communications.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless's for reasonable expenses incurred in furnishing such facilities or assistance. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).